(No. 2876—

ALTA SULLIVAN, AN INSANE PERSON, JOHN SULLIVAN, A MINOR AND WILLIAM SULLIVAN, A MINOR, ALL APPEARING BY MARY SULLIVAN, THEIR NEXT FRIEND, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 15, 1937.*

DOWNING, GUMBART & GRIGSBY, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

On May 5, 1933 Herman J. Arnold, Administrator of the Estate of Ambrose Sullivan, deceased, filed his complaint in the Court of Claims, seeking an award of Ten Thousand ($10,000.00) Dollars for the accidental death of Ambrose Sullivan. The complaint was drawn as an action of trespass on the case, but plaintiff changed his prayer for relief and sought an award under the provisions of the Workmen's Compensation Act of Illinois.

The Attorney General contended that claimant was not entitled to recover for the following reasons:

1. That no claim for compensation had been made within six months after the accident as required by Section 24 of the Workmen's Compensation Act.

2. That the accident in question did not arise out of the employment of said decedent.

The record failing to disclose compliance with Section 24, the award was denied and the claim dismissed. The opinion appears as claim No. 2171, 8 C. C. R. P. 399.

On April 1, 1936 Alta Sullivan, an insane person and widow of Ambrose Sullivan, and John Sullivan and William Sullivan, minor children of Ambrose Sullivan, filed the present claim, by Mary Sullivan, their next friend, and herein seek an award under the terms of the Workmen's Compensation Act for the death of Ambrose Sullivan.

By a stipulation between the attorneys for the respective parties, all evidence, stipulations, briefs and arguments in the former case, No. 2171, are accepted as a part of the record in the present case. In addition thereto, testimony was taken as to the insanity of Alta Sullivan, surviving widow. Claimants herein allege that the insanity of Alta Sullivan and the fact of the minority age of said children creates an exception

as to each in regard to the time limit stated in Section 24 of the Workmen's Compensation Act.

The Attorney General interposes the following objections:

1. Jurisdiction of claim by this court in the absence of compliance as to notice required by Section 24 of the Workmen's Compensation Act.

2. Whether the adjudication in Claim No. 2171 is as to this claim, res adjudicata?

3. Did the injury to Ambrose Sullivan arise out of and in the course of the latter's employment?

4. Amount of compensation, if any, payable to claimants.

A condensed statement of facts as found in the former opinion and the additional evidence taken herein is as follows:

For about eight days prior to the 16th day of June, A. D. 1932, Ambrose Sullivan had been employed by respondent in mowing weeds on S. B. I. Routes Nine (9), Three (3) and Ninety-five (95) in McDonough County, under the supervision of Jesse Walters, Highway Maintenance Superintendent. Sullivan lived about two miles north of Macomb, and was the owner of a team of horses and a mower which he used in his said work. For the first few days of his employment he worked near his home, and drove the team home at the end of the day's work. After the first few days, he was at some considerable distance from his home at quitting time, and on those days he left his team and mower with some farmer who lived near the place where he stopped work, and rode home with Mr. Jesse Walters, the Maintenance Superintendent, and the next morning he would come out with his Maintenance Superintendent to the place where he left his team the night before. The matter or custom of riding back and forth with the Maintenance Superintendent was not a part of the contract, but was a sort of mutual arrangement or understanding between them. The same custom existed with other men who were also employed in mowing weeds. The mowers ordinarily worked nine hours a day, usually commencing at seven o'clock A. M. and quitting at five o'clock P. M. Sometimes they started a little before seven or a little after seven, but they aimed to start work at seven o'clock. Their time

commenced when they got on the job. On a wet morning their time commenced when the weeds were dry enough to mow.

On June 15th, 1932 Sullivan was about seven miles from his home when he quit work. He left his team and mower with a farmer living about forty rods north of S. B. I. Route 95, and rode home with his Maintenance Superintendent.

The next morning the Maintenance Superintendent in driving out to work met Sullivan about one-half mile from his (Sullivan's) house, and stopped to pick him up. The Maintenance Superintendent was driving a small pick-up truck with a single seat, and there were two men riding in the seat with the driver. Sullivan rode in the back of the truck, which went north on Route 3 to the junction and then east on Route 95, to a point about seven miles from Macomb where the Maintenance Superintendent stopped the truck so that Sullivan could get out and get his team and mower. Sullivan got out and started across the road to the north. Just then Mr. Walters, the Maintenance Superintendent, called to him and he came back. In this connection Mr. Walters testified:

"It had come a rain the day before and we were in doubts whether it was going to dry enough to go on mowing. After he got out I spoke to him, and I said, 'Mr. Sullivan, you can use your own judgment about when to start.'"

Homer B. Carey, the only other witness who testified as to this conversation, said:

"Mr. Sullivan got out and started across the road and Jesse hollered at him and called him back and told him that it was too wet, we wouldn't hitch up for about two hours until it got a little dryer."

After this conversation, Sullivan started back across the road again to the north. Just then one Keith Sapp who was also driving east on said Route 95, approached the State truck, and turned to the left to pass it just as Sullivan was crossing the road the second time. Sapp turned further to the left to avoid an accident, but Sullivan evidently became confused, and ran into the side of Sapp's car, whereby he was thrown to the pavement, and sustained injuries from which he died while being taken to the hospital.

Sullivan left him surviving his wife and four children, two of whom were under sixteen years of age at the time.

Sullivan's earnings were eighty-five cents (85c) per hour for himself, team and mower, of which amount forty cents (40c) was regarded as his for his individual services and the balance for the team and mower.

The shock of the death of Ambrose Sullivan apparently upset the mental condition of his wife, Alta Sullivan, and from that time forward her mental disability increased. Right after the accident she was placed in St. Francis Hospital at Macomb for a brief time because of her mental condition, and eventually on April 29, 1934 she was adjudged insane in a proceeding of the County Court of McDonough County, Illinois. She was released on furlough as an improved patient in September, 1934, but never recovered her normal mentality and was again recommitted to the State Hospital at Peoria, and was under confinement at the latter place at the time of taking the evidence in this cause. Dr. Joseph H. Davis of Macomb testified that he attended Mrs. Sullivan; that at the time of the death of her husband ''she went all to pieces and got very bad mentally—so bad, that we finally had to adjudge her insane and take her away. It all seemed to be due to worry over the death of her husband . . . I was one of the commission that examined her at the time she was adjudged insane . . . Prior to that we tried to control her by giving her sedatives . . . I do not think that she was capable of transacting any business of a serious nature at any time after the death of Mr. Sullivan.'' Alta Sullivan has never remarried. The child, William Sullivan, was born March 4, 1920 and John Sullivan was born January 7, 1918. All were dependent upon Ambrose Sullivan at the time of his death and are now living.

The first objection by respondent is as to the jurisdiction of the court.

It is apparent from the record that Ambrose Sullivan and respondent were both within the terms of the Workmen's Compensation Act at the time of the latter's death, and that under the terms of *Paragraph 6, Section 6* of the *Court of Claims Act* this court has jurisdiction of Workmen's Compensation Claims arising out of accidents to State employees. The first material question is, ''Are Claimants herein barred under Section 24 of the Act because of failure to file notice of claim within six months after the accident, and for failure to file application for compensation within one year after the date of the death of Ambrose Sullivan?'' While such time limits definitely apply to compensation claims in general, said Section 24 contains the further provision,

"That in case of mental incapacity—of any dependent of a deceased employee who may be entitled to compensation under the provisions of this Act, the limitations of time by this Act provided shall not begin to run against said mental incompetents until a Conservator or Guardian has been appointed."

Claimant contends that under the showing made in the record as to the mental disability of Alta Sullivan, surviving widow of Ambrose Sullivan, the running of the statute has been tolled as against her, under the specific exception recited in Section 24 of the Workmen's Compensation Act, and that inasmuch as the children, William Sullivan and John Sullivan, were minors and under the age of sixteen years at the time of their father's death, a proper construction of said Section 24 should also grant to them an exception as to compliance with the requirements of such section in the matter of time limitations.

The question as to the latter exception is not material under the decision of this case, for if an award is granted it will be granted to the mother and if so granted, then under the terms of *Section 7 (h-2)* the award provided for in *Section 7 (a)* of a sum equal to four times the average annual earnings of the employee and not more in any event than Four Thousand ($4,000.00) Dollars is increased by said *Section 7 (h-2)* to a possible maximum of four times the average annual wages plus $450.00.

The evidence in the record sufficiently establishes the fact that Alta Sullivan suffered from mental incapacity from the time immediately following the death of her husband. The Doctor's evidence and the records show that she became a mental patient in a local hospital very shortly thereafter, has been committed and recommitted to one of the State Institutions for the insane, and is now so confined; further, that no Conservator has ever been appointed for her. We therefore find that the statute of limitations has not run against Alta Sullivan; and that the court has jurisdiction of the parties and the subject matter hereof.

Upon the second objection, i. e. whether the adjudication in Claim No. 2171 is as to this claim res adjudicata, the court finds—that the former action was brought by Herman J. Arnold as Administrator of the Estate of Ambrose Sullivan, deceased; that the parties plaintiff are not the same.

"The requisites of a judgment pleaded as a bar in general require that a plea of res adjudicata cannot prevail unless there is a concurrence of

four elements; identity in the thing sued for; identity in the cause of action; identity of persons and of parties to the action; identity of quality in the persons for or against whom the claim is made."

   *34 C. J. p. 752, Judgments, Par. 1162.*

  "A judgment for defendant on the ground that the court is without jurisdiction is not a bar to a subsequent action."

   *34 C. J. p. 776, Judgments, Par. 1194.*

We therefore find that the former case of *Arnold, Administrator, etc.* vs. *State,* C. C. R. No. 2171 is not res adjudicata as to the present claim.

The second material question then is, ''Did the injury arise out of and in the course of the employment?''

Ambrose Sullivan was engaged as a laborer to mow weeds along the improved highway of the State of Illinois known as S. B. I. No. 95; on the 23rd day of June, A. D. 1932 he was struck by an automobile traveling on said highway; said accident occurred at the cross-roads where his actual work was to begin. At the time of the accident he was on the premises of respondent, and at the scene of his employment. The accident happened at approximately 7 o'clock A. M. just before Sullivan was to enter upon his day's labors. He had ridden to the point in question in a State owned truck driven by Jess Walters, Highway Superintendent in charge of maintenance work at said point. The team and mower that Sullivan had previously used and with which he was to resume operations on the morning in question were at a farm one-fourth mile down the dirt highway that intersected with S. B. I. Route No. 95. He alighted from the truck at the intersection and started across the road, just as Keith Sapp approached from the rear in his own automobile; both cars were going east; Sapp pulled to the left to go around the State truck and blew his horn. Sullivan came around from the back of the truck and ran across on the slab in front of Sapp's car. The latter pulled off the pavement on the left-hand side of the road until he was entirely off the slab. Notwithstanding this, the car side-swiped Sullivan and he died from the effect of the injury received.

An issue is raised in the record as to whether Sullivan's employment had begun at the time of the accident, or whether he was still on his way to such employment; and if the latter whether he was on the premises of respondent, en route to his employment, and thereby entitled to recover for injuries received, under the terms of the Workmen's Compensation Act.

The fact that he was riding in a truck owned by the State is not material, for the evidence shows that transportation from town to the scene of his daily labors was not included under the terms of his employment, but was in fact a mere accommodation extended him by his superior, Mr. Walters. At the time of the accident however, Sullivan had in fact arrived at the actual point where his labor was to be performed. His employment consisted of mowing weeds. His scale of pay was Forty Cents (40c) per hour when individually employed; Seventy Cents (70c) per hour for his services with his team and Eighty-five Cents (85c) per hour when he used his team and mower. On the morning in question he was to have obtained his team and mower at a point one-fourth mile up the dirt road from the intersection where he was killed, and had the accident not resulted he would have returned with the team and mower to the point where he alighted from the truck. His fellow employee, Homer B. Carey, testified that when Sullivan got out of the truck and started across the road, his Superintendent Walters "hollered at him and called him back, told him it was too wet; we wouldn't hitch up for about two hours until it got a little dryer." He started back across the road and he run into this car of Sapp's and was killed." He further testified, that he believed the reason Sullivan did not see the approaching car was because his attention was directed to Mr. Walters, when the latter called him back.

Jesse Walters testified "We stopped to let Sullivan out . . . after he got out I said 'Mr. Sullivan you can use your own judgment about when to start' . . . he was back of the truck then. His time was to start that morning whenever the grass or weeds were dry enough to mow . . . we always aimed to start the time at 7 o'clock, but a morning like that when it was wet we didn't know when we would get started."

In the case of *Indian Hill Country Club* vs. *Ind. Comm.* 309 Ill. 271, a caddie twelve years old had waited near the Club House, until it was evident his services would not be needed. He was leaving the grounds but still on the premises when injured. The court said—

"It is not essential to the right to receive compensation that the employee should have been working at the particular time when the injury was received. The employment is not limited to the exact moment when he begins work and when he quits work. An injury accidentally received on the

premises of the employer by an employee while going to or from his place of employment by a customary or permitted route within a reasonable time before or after work, is received in the course of and arises out of the employment."

"Whether the exact hour of seven o'clock had arrived or whether it was a few minutes either before or after seven is not material so long as a substantial and reasonable compliance with the employer's requirements is shown."

*Union Starch Co. vs. Ind. Comm.*, 344 Ill. 77.

At the time of the accident in question Sullivan was on the premises of his employer; was at the immediate place where his labors were to be performed; was to determine the exact moment when his actual labor should start; was traveling a natural and permissible course included in the field of his labor, and at the exact moment of his death was receiving instructions from his superior as to the performance of such duties. We believe the record sufficiently discloses that the accidental injuries resulting in the death of Ambrose Sullivan arose out of and in the course of his employment, within the meaning of the Workmen's Compensation Act.

The remaining question is the amount of compensation to which claimant is entitled.

*Section 7 (a)* of the *Workmen's Compensation Act* provides—

"The amount of compensation which shall be paid for an injury—resulting in death shall be:

(a) If the employee leaves any widow, child or children, whom he was under legal obligation to support at the time of his injury, a sum equal to four times the average annual earnings of the employee, but not less in any event than $2,500.00 and not more in any event than $4,000.00."

*Section 7 (h-1), Workmen's Compensation Act.*

"Whenever in paragraph (a) of this section a minimum of $2,500.00 is provided, such minimum shall be increased to the amount: $3,100.00 in case of two children under the age of sixteen years at the time of the death of the employee."

*Section 7 (h-2), Workmen's Compensation Act.*

"Whenever four times the average annual earnings of the deceased employee as provided in paragraph (a) of this section amounts to more than $2,500.00 and to less than $4,000.00, the amount so payable under said paragraph shall be increased as follows: In case such employee left surviving him two children under the age of sixteen years, the amount so payable shall be increased $450.00."

While Ambrose Sullivan was receiving Eighty-five (85c) Cents per hour for his own labor and that of the use of his team and mower, the evidence shows that his individual wages were Forty (40c) Cents per hour on the basis of a nine-hour a day, and being intermittently hired would become within the

rule of two hundred (200) days per year, thus making his average annual earnings Seven Hundred Twenty ($720.00) Dollars. Four times thereof is Two Thousand Eight Hundred Eighty ($2,880.00) Dollars. Claimant contends for an allowance of Three Thousand One Hundred ($3,100.00) Dollars under the provisions of *Section 7 (h-1)*. Counsel for respondent contend that the allowance, if any, should be only in the amount of Two Thousand Eight Hundred Eighty ($2,880.00) Dollars, and that no allowance for the children under sixteen years of age is justified for the alleged reason that a claim by the children is barred by the limitations of *Section 24* of the *Workmen's Compensation Act* and that it would be an anomalous situation if additional compensation would be paid to those who are not legal claimants.

As has heretofore been noted, the surviving widow being recognized as a proper claimant, the amount payable to her is determined by the fact as to whether the injured employee did or did not leave dependent children under the age of sixteen years at the time of his death, and while the amount of such increased payment, if any, may under the provisions of *Section 7 (g)* be divided among the surviving widow and such children as the court may deem best, such award in the first instance is in fact made to the surviving widow. As expressive of the court's opinion in the matter however, we believe under the authority of *McDonald* vs. *City of Spring Valley*, 285 Ill. 52 and *Walgreen Co.* vs. *Ind. Comm.* 323 Ill. 194, that notwithstanding the fact that the Workmen's Compensation Act provides in general in Section 24 for certain limitations of time, that such limitations do not run against minors of tender years, and that a construction of such Act in connection with the well known rules of law pertaining to the rights of minors and the tolling of statutes of limitations pertaining to them, would preclude the limitations of Section 24 from applying to such minors. As stated in the former case "The recognition by the law, of the status of infants, and of their exemption up to a certain age from liability under the law, is so well known that it must be presumed that the legislature, in enacting such a statute as the one under consideration, did not intend by the general language used to include within its provisions a class of persons which the law has universally recognized to be utterly devoid of responsibility." However, in the present case as stated above, the award is being allowed

because the surviving wife is a proper claimant, and the amount of the award is fixed by the number and status of the dependents left surviving. Under the construction given the several provisions of Section 7 of the Workmen's Compensation Act, in the case of *Moweaqua Coal Corporation* vs. *Ind. Comm.* 360 Ill. 194, the amount of compensation due in the present case is fixed by Section 7 (h-2). The annual wages of Seven Hundred Twenty ($720.00) Dollars multiplied by four equals Two Thousand Eight Hundred Eighty ($2,880.00) Dollars, and that being more than Two Thousand Five Hundred ($2,500.00) Dollars and less than Four Thousand ($4,000.00) Dollars, the allowance is increased under the terms of Section 7 (h-2) the sum of Four Hundred Fifty ($450.00) Dollars, or a total of Three Thousand Three Hundred Thirty ($3,330.00) Dollars.

We find that the persons who form the basis for determining the amount of compensation to be paid, and the respective shares to be so paid, in proportion to their respective dependencies are as follows:

Allowance, account Alta Sullivan, surviving wife.........  $2,880.00
Allowance, account John Sullivan and William Sullivan,
    surviving children under sixteen years of age..........    450.00
 

                                                  $3,330.00

An award is hereby allowed in favor of claimant Alta Sullivan by Mary Sullivan, her next friend in the sum of Three Thousand Three Hundred Thirty ($3,330.00) Dollars; Four Hundred Fifty ($450.00) Dollars of which is allowed because of the survivorship of John Sullivan, age fourteen years at the time of his father's death, in June, 1932, and William Sullivan, age twelve years at that time.

It is ordinarily contemplated that a surviving parent will use a substantial part of funds received, for care and support of the minor children. In view of the conservatorship required for Alta Sullivan, it seems equitable and best under the authority of said *Section 7 (g)* of the Act, for the court to order payment of said award of Three Thousand Three Hundred Thirty ($3,330.00) Dollars, as follows, to-wit:

One-third payable to the Conservator of Alta Sullivan.
One-third payable to the Guardian of William Sullivan.
One-third payable to the Guardian of John Sullivan.

It is Therefore Ordered that immediate warrants be issued as follows, to-wit:

| | |
|---|---|
| To the Conservator of Alta Sullivan for.................. | $1,072.00 |
| To the Guardian of William Sullivan for................ | 1,072.00 |
| To the Guardian of John Sullivan for.................. | 1,072.00 |

and that future monthly warrants be issued to said conservator and guardians respectively for payments of Four ($4.00) Dollars per week each, commencing with the week ending August 29th, and continuing until each of said three persons have respectively received the further sum of Thirty-eight ($38.00) Dollars.

This award being subject to the provisions of an Act entitled, ''An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof,'' Approved July 3, 1937 (Sess. Laws 1937, p. 83) and being, by the terms of such act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from such appropriation from the Road Fund in the manner provided for in such Act.